IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, EASTERN DIVISION


| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CRIMINAL ACTION NO. |
| | ) | 3:06cr95-MHT |
| DEXTER WAYNE SNIPES | ) | (WO) |


OPINION AND ORDER

This criminal case--in which defendant Dexter Wayne Snipes is charged with possession with intent to distribute cocaine base, possession of marijuana, possession of a firearm in relation to drug trafficking, and being a felon in possession of a firearm--is before the court on Snipes's motion to suppress evidence. The court held an evidentiary hearing on August 7, 2006, and also heard argument on aspects of the motion later during trial. The court issued an oral order, granting the motion in part and denying it in part. This opinion and order explains that ruling in greater detail.

## I. BACKGROUND

On November 1, 2005, City of Tuskegee Detective Daniel Motley obtained from a state district judge a warrant to search Snipes's residence, vehicles parked in the yard at the residence, and anything within the fenced area of the yard for "DVD players, hair clippers and a television set, and any other stolen property and/or contraband."[1]  Motley executed the affidavit supporting the warrant, which provided the following as the "facts tending to establish the grounds for issuance of a search warrant":

> "This office, along with other agencies, have been investigating a number of burglaries in the Tuskegee area.  On October 11, 2005, this officer learned that one suspect, known as Patrick Daniels, sold various stolen items to Dexter Snipes, [a resident of the address listed on the affidavit]. Based on the information gathered from the informant, this officer observed the residence of Dexter Snipes for approximately one and [sic] half weeks. While observing this residence, this

---

1. Defendant's motion to suppress (Doc. No. 25), Ex. 2, Search warrant.

officer noticed unusual amounts of traffic coming and going. Based on this information, this officer believes that contraband related to these burglaries may be at the residence of Dexter Snipes."[2]

Members of the Tuskegee Police Department went to Snipes's residence to execute the search warrant on November 4, 2005. At that time, Tuskegee police were aware that Snipes had an outstanding arrest warrant based on a federal indictment. When they arrived at Snipes's residence, Snipes was sitting in a car parked in front of the house. When they pulled him out of the car, a silver handgun fell out from the driver's side. They ordered him to lie on the ground, placed him under arrest, and searched his person. That search uncovered another handgun that was tied around his waist with rope or string.

Officers then searched the car and the residence. The search of the car uncovered the following items: several ounces of marijuana sitting on the driver's seat;

_____

2. Id., Ex. 1, Affidavit for search warrant.

3

two bags containing cocaine base in the glove compartment; a pill bottle containing assorted pills in the glove compartment; and an SKS assault rifle in the trunk of the car. The search of the residence uncovered a handgun in a bedroom and a shotgun in another bedroom. Snipes moved to suppress all of this evidence.

At the evidentiary hearing, Motley testified that the state judge who issued the warrant did not immediately sign the affidavit and issue the warrant when Motley presented it to him. Instead, the judge asked him how Snipes's residence was related to the stolen items, that is, why the officer thought the stolen items would be at Snipes's house. The officer then told the judge that the "informant" mentioned in the affidavit was actually Patrick Daniels, who had been arrested in connection with the burglaries. After his arrest, Daniels had informed Motley that he sold some stolen items (namely, those listed in the affidavit) to Snipes at Snipes's residence. Only after learning this information did the judge issue

4

the warrant.  Motley testified that he did not provide any information to the state judge about Daniels's reliability or any information that demonstrated that Motley had verified Daniels's story.

Motley testified that he had additional evidence that supported probable cause beyond what he included in the affidavit.  He noted that, during his surveillance of Snipes's residence, he noticed "several" people walk up to the house carrying bags that were "bulging" because they were so full, but that the bags appeared empty when those individuals left the house.  He stated that he therefore believed that additional stolen items were being left at Snipes's house.  Motley testified that he did not mention this additional information to the state judge.

Finally, the court heard testimony that the officers intended to arrest Snipes on the federal arrest warrant if they encountered him while executing the search

warrant, and did, in fact, do so when they found him in the car.

## II. DISCUSSION

The Fourth Amendment protects "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. Amend. IV.  The Fourth Amendment further provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."  Under what is known as the "exclusionary rule," evidence seized as a result of an illegal search may not be used by the government in a subsequent criminal prosecution.  <u>United States v. Martin</u>, 297 F.3d 1308, 1312 (11th Cir. 2002).

In deciding whether to suppress any of the evidence, the court must first determine if the search warrant was valid, and, if it was not, then consider whether any

exceptions to the Fourth Amendment's warrant requirement apply.

## A. The Search Warrant

The primary inquiry is whether there was probable cause to support the search warrant. Additionally, the government argued that, even if probable cause was lacking, the so-called "good-faith exception" to the exclusionary rule should apply here.

### 1. Probable cause

The judge issuing the search warrant must "make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." Illinois v. Gates, 462 U.S. 213, 238-39 (1983). A federal court does not review

7

a state judge's probable-cause determination de novo, but rather considers only whether the evidence viewed as a whole provided a "substantial basis" for the finding of probable cause at the time the warrant was issued. Massachusetts v. Upton, 466 U.S. 727, 732-33 (1984) (per curiam).

Here, Motley relied almost entirely on hearsay from an "informant" to establish that stolen items had been sold to Snipes. If an affidavit relies on an informant to establish probable cause, the "informant's 'veracity,' 'reliability,' and 'basis of knowledge' are all highly relevant in determining the value of his report." Gates, 462 U.S. at 230. In addition to the information contained in the affidavit, the state judge knew that the "informant" had been arrested for burglary and had told the police that he had sold stolen property to Snipes at Snipes's house.

Although the state judge had information that established the informant's basis of knowledge, he had no

information by which he could assess the reliability or veracity of the informant.    The affidavit provides no indication that the informant had provided accurate information in the past or that the officer had independently corroborated the truthfulness of any information given to him by the informant.  Although the officer determined that unusual amounts of traffic came and went from Snipes's residence, that is not independent corroboration of the informant's story.  Essentially, the state judge had no way to determine whether the informant's tip was truthful and should be afforded any weight.  Because Motley provided no information to the state judge regarding the informant's reliability or veracity, the informant's tip, standing alone, was not sufficient to establish probable cause.  See Martin, 297 F.3d at 1314 ("If an informant is mentioned in the affidavit, the affidavit should also demonstrate the informant's 'veracity' and 'basis of knowledge.'") (emphasis added).

The affidavit also indicated that an "unusual amount" of traffic was coming and going from Snipes's residence. Because there are many explanations for unusual amounts of traffic, many benign, a large amount of traffic to a residence, standing alone, is not sufficient to create probable cause of illegal activity. Although Motley himself had more specific information, namely that several people arrived at the house with bulging bags and left with empty bags, that information was not relayed to the judge, and thus did not enter into the probable-cause assessment.

Although neither the tip nor the officer's observation of unusual amounts of traffic establish probable cause independently, a probable cause determination is based on the totality of the circumstances. Gates, 462 U.S. 238. Thus, the ultimate question for this court was whether the information available to the state judge, viewed as a whole, provided

a substantial basis for the issuing judge's finding of probable cause.  <u>Upton</u>, 466 U.S. at 732-33.

This court is constrained to conclude that it did not.  A tip from an informant, whose reliability is unknown, that contraband had been sold at a residence 21 days prior, together with a vague assertion that "unusual amounts of traffic [were] coming and going" did not provide a substantial basis for the state judge to find probable cause.  Not only was the tip 21 days old and potentially unreliable, but the officer's efforts to independently corroborate the tip for more than a week succeeded in producing what can only be considered highly ambiguous information susceptible to multiple explanations, many of which are benign.  That more than a week of surveillance revealed no information corroborating any specifics of the tip also counsels against a finding of probable cause.

In sum, the state judge was given no reason why he should trust the informant's tip and no evidence that the

police had independently verified even one detail of the informant's tip.  There was not a substantial basis for a finding of probable cause, and the warrant was therefore invalid.

## 2. The good-faith exception

Although the search warrant was invalid, the evidence is not automatically suppressed under the exclusionary rule.  Under the good-faith exception, which was first established in <u>United States v. Leon</u>, 468 U.S. 897 (1984), "courts generally should not render inadmissible evidence obtained by police officers acting in reasonable reliance upon a search warrant that is ultimately found to be unsupported by probable cause."  <u>Martin</u>, 297 F.3d at 1313.

The exception applies in all but four limited sets of circumstances: (1) where the issuing magistrate was misled by information in an affidavit that the affiant knew was false or would have known was false except for

his reckless disregard of the truth; (2) where the issuing magistrate has wholly abandoned a judicial role; (3) where the affidavit supporting the warrant is "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable;" and (4) where a warrant is so facially deficient as to render official belief in its validity unreasonable. Leon, 468 U.S. at 923. Here, there was no credible evidence that Motley misled the state judge, and the warrant was not facially invalid. However, the affidavit supporting the warrant is problematic, implicating the third exception.

The Eleventh Circuit Court of Appeals has described the inquiry here as whether the affidavit was so bare-boned and conclusory that no officer could have reasonably relied on the warrant obtained based on the affidavit, United States v. Glinton, 154 F.3d 1245, 1257 (11th Cir. 1998). During this inquiry, the court looks only at the face of the affidavit. United States v.

13

<u>Robinson</u>, 336 F.3d 1293, 1296 (11th Cir. 2003) (holding that "in order to determine whether an affidavit lacked sufficient indicia of probable cause, we must look only at the face of the affidavit.").

A review of the affidavit reveals that it comes nowhere near establishing probable cause. It contains two "facts" tending to support probable cause: (1) that someone told Motley that Snipes had bought stolen items from a suspect in several burglaries; and (2) that surveillance of Snipes's residence for one-and-a-half weeks had revealed an "unusual" amount of traffic. The affidavit completely fails to link the stolen items to Snipes's residence.[3] Moreover, it provides no information regarding the reliability, veracity, or basis of knowledge of the informant.

---

3. Although Motley corrected this defect under questioning of the magistrate, this inquiry is limited to the four corners of the affidavit. <u>Robinson</u>, 336 F.3d at 1296. The affidavit was not amended to include this information.

Indeed, this appears to be the prototypical "bare-boned" affidavit because its only two probable-cause facts are conclusory allegations ("someone" told us Snipes bought stolen property, and there is "unusual" activity at Snipes's house) that do not even link the illegal activity to Snipes's residence, which was the place the officers sought to search. In short, the affidavit is so obviously lacking in indicia of probable cause that official belief in the validity of the warrant was entirely unreasonable in this case.[4]

Because the search warrant was invalid and the good-faith exception does not apply, the search warrant could not serve as a valid basis to support any of the searches in this case, that is, the search of Snipes's residence, his car, or his person. It is therefore necessary to

_____

4. Having concluded that the affidavit was so lacking in probable cause as to render it impossible for the officers reasonably to rely on the warrant's validity, the court declines to reach the question of whether the state judge had wholly abandoned his judicial role.

consider each search to see if some other exception to the warrant requirement is applicable.

## B.   Search of Snipes's Residence

Searches and seizures inside a home without a warrant are presumptively unreasonable, <u>Payton v. New York</u>, 445 U.S. 573, 586 (1980), unless there exists probable cause and certain, limited exigent circumstances, <u>United States v. Blasco</u>, 702 F.2d 1315, 1325 (11th Cir. 1983) (cataloguing the recognized exigent circumstances allowing warrantless searches based on probable cause). Because the government presented no evidence that any exigent circumstances were present here, the evidence obtained from Snipes's residence, the shotgun and one of the handguns, should be suppressed.

## C.   Search of Snipes's Person

Officers obtained one handgun from Snipes's person after they had placed him under arrest.  The evidence

16

adduced at the hearing showed that Snipes was arrested based on a valid federal arrest warrant. The Supreme Court has long-recognized an exception to the warrant requirement that allows the contemporaneous search without a warrant of any person who has been arrested and the area immediately surrounding that person. <u>Chimel v. California</u>, 395 U.S. 752, 762-63 (1969). This exception allows police to remove any weapons that might pose a danger to officer safety and to prevent the concealment or destruction of evidence. <u>Id</u>. at 763. The firearm taken from Snipes's person was obtained in a search incident to Snipes's lawful arrest on the valid federal arrest warrant and should not be suppressed.

### D.  Search of Snipes's Car

Officers also searched Snipes's vehicle and found cocaine base and pills in the glove box, marijuana on the driver's seat, and an SKS rifle in the trunk. The exception recognized in <u>Chimel</u> has been extended to allow

officers to search the passenger compartment of a car
when its occupants have been arrested.  <u>New York v.
Belton</u>, 453 U.S. 454, 459-61 (1981).  Officers may
search the contents of all containers in the passenger
compartment of the car, including "closed or open glove
compartments, consoles, or other receptacles located
anywhere within the passenger compartment, as well as
luggage, boxes, bags, clothing, and the like."  <u>Id</u>. at
460-61 & n.4.  Thus, evidence obtained from the glove
compartment, the cocaine base and pills, and from the
driver's seat, the marijuana, is admissible.

The SKS assault rifle, however, was found in the
trunk of the car.  Officers may not search the trunk of
a car incident to the arrest of the driver of the car.
<u>Belton</u>, 453 U.S. at 461 n.4 ("Our holding encompasses
only the interior of the passenger compartment of an
automobile and does not encompass the trunk.").[5]

---

5. The Supreme Court has recognized another exception
to the warrant requirement, the automobile exception,
which allows searches of cars based on probable cause
without a warrant.  <u>California v. Acevedo</u>, 500 U.S. 565,

18

Accordingly, the officers had no basis to search the trunk of the car, and the SKS rifle should be suppressed.

The final issue is the handgun that fell from the driver's side of the car when the driver's door was opened.  Although the gun was not in the passenger compartment or on Snipes's person after he was arrested, it was in the plain view of the officers who were executing the arrest warrant on Snipes.  It is therefore admissible under another well-recognized exception to the warrant requirement, the so-called "plain-view doctrine."  The exception applies, and the evidence may be seized without a warrant, if "an object ... comes into view during a search incident to arrest that is appropriately

---

569 (1991).  In Acevedo, the Court reaffirmed that officers with probable cause that contraband is in the trunk cannot search the passenger area of the car without probable cause to believe that contraband was also in the passenger compartment.  Id.  This court sees no reason, and the government advanced no argument why, the inverse is not true.  Here, although there was probable cause to believe that contraband was in the passenger compartment of Snipes's vehicle, the government presented no evidence indicating that any contraband would be located in the trunk.

19

limited in scope under existing law" or if "a police officer is not searching for evidence against the accused, but nonetheless inadvertently comes across an incriminating object." <u>Coolidge v. New Hampshire</u>, 403 U.S. 443, 465-66 (1971).

* * *

Consistent with the foregoing analysis, it is ORDERED as follows:

(1) Defendant Dexter Wayne Snipes's motion to suppress evidence (Doc. No. 25) is granted in part and denied in part.

(2) The following evidence is suppressed: the handgun and shotgun found in defendant Snipes's residence and the SKS rifle found in the trunk of his car.

(3) The following evidence is admissible at trial: the handgun found on defendant Snipes's person, the handgun that fell out of the car, the marijuana found on

the driver's seat, and the cocaine base and pills found

in the glove compartment of the car.

    DONE, this the 11th day of August, 2006.

                                  ____/s/ Myron H. Thompson____

                                  UNITED STATES DISTRICT JUDGE